### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF KANSAS

```
PATRICIA ROMIG,                    )
                                   )
                 Plaintiff,        )      CIVIL ACTION
                                   )
v.                                 )      No.  14-1209-MLB
                                   )
CAROLYN W. COLVIN, Acting          )
Commissioner of Social Security,   )
                                   )
                 Defendant.        )
_____)
```

### MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying plaintiff disability insurance benefits and supplemental security income payments.  The matter has been fully briefed by the parties and the court is prepared to rule. (Docs. 11, 14).

## I. General Legal Standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a

quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find

non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487. Before going from step three to step four, the agency will assess the

claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); 404.1520(f, g).

## II.  History of Case

On April 17, 2013, administrative law judge (ALJ) Michael Shilling issued his decision. (R. at 6-26). Plaintiff alleged that her[1] disability began December 31, 2009. (R. at 9). At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since her alleged onset date (R. at 11). At step two, the ALJ found that plaintiff had the following severe impairments: bipolar disorder, anxiety and schizoaffective disorder (R. at 12). At step three, the ALJ found that plaintiff's impairments do not meet or equal a listed impairment (R. at 13-14). After establishing plaintiff's RFC, the ALJ found at step four that plaintiff cannot perform past relevant work (R. at 19). At step five, the ALJ found that plaintiff would be able to perform other work which exists in significant numbers and therefore concluded that plaintiff was not disabled at any time. (R. at 20-21).

## III. Analysis

### A.   Treatment Team and Canterbury's Opinions

Plaintiff contends that the ALJ did not give a legitimate reason to discount the treatment team or Canterbury's opinions. The ALJ determined plaintiff's RFC was as follows:

Full range of work at all exertional levels. However, she

---

[1] The pronoun she will be used throughout the opinion to be consistent with the ALJ opinion and treatment records. After reviewing the medical records, the court observes that plaintiff is receiving treatment for gender identity issues. (Doc. 10 at 624).

is limited to no interaction and cooperation with the general public. She may work in proximity to others, but she is limited to jobs that do not require close cooperation and interaction with coworkers, in that she would work best in relative isolation. She may do simple tasks, but she is limited to job [sic] that do not demand attention to details or complicated job tasks or instructions. She retains the ability to maintain attention and concentration for a minimum of 2-hour periods of time, adapt to changes in workplace on a basic level, and accept supervision on a basic level.

(Tr. 15).

In reaching that conclusion, the ALJ considered plaintiff's medical records and opinions from Kenneth Burstin, Ph.D., Carol L. Adams, Psy.D., Dr. Stanley Mintz, Tammy Canterbury, APRN, and plaintiff's treatment team at Elizabeth Layton Center. Plaintiff's treatment team included Robin Burgess, LSCSW, Tammy Canterbury, APRN, Jessica Slocum, Jessica Plumley, B.S., CSS, and Kimberly Wood, LPC.[2]

### Standards

The applicable regulations require the ALJ to consider all medical opinions. See 20 C.F.R. § 404.1527(c). The ALJ also must discuss the weight assigned to such opinions. See id. § 404.1527(e)(2)(ii) ("[T]he administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.").

"Medical opinions are statements from physicians and

---

[2] The treatment team is supervised by Dr. Gerald Gambrill, medical director at the Elizabeth Layton Center. After a review of the records, it does not appear that plaintiff met with Dr. Gambrill while receiving services at the Elizabeth Layton Center.

psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). The regulations identify three types of "acceptable medical sources": (1) treating sources, i.e., medical sources who have treated or evaluated the claimant or have had "an ongoing treatment relationship" with the claimant; (2) nontreating sources, i.e., medical sources who have examined the claimant but lack an ongoing treatment relationship; and (3) nonexamining sources, i.e., medical sources who render an opinion without examining the claimant. See id. § 404.1502; Pratt v. Astrue, 803 F.Supp.2d 1277, 1282 n. 2 (D.Kan.2011). The Commissioner generally gives more weight to opinions from examining sources than to opinions from nonexamining sources. 20 C.F.R. § 404.1527(c)(1).

In addition to evidence from acceptable medical sources, the Commissioner "may also use evidence from other sources to show the severity of [a claimant's] impairment(s) and how it affects [his or her] ability to work." 20 C.F.R. § 404.1513(d). In 2006, the Social Security Administration recognized "the growth of managed health care" and the increasing role played by non-acceptable medical sources, "such as nurse practitioners, physician assistants, and licensed clinical social workers," in treating and evaluating claimants. See Titles II & XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and

<u>Nongovernment Agencies</u>, SSR 06-03p, 2006 WL 2329939, at *3 (S.S.A. Aug. 9, 2006) (hereinafter "SSR 06-03p"). SSR 06-03p was issued to clarify how ALJs "consider opinions and other evidence from medical sources who are not 'acceptable medical sources' and from 'nonmedical sources.'" <u>Id.</u> at *4.

Licensed clinical social workers and advanced nurse practice registered nurses do not qualify as acceptable medical sources, even though they are medical sources. <u>See id.</u> Although "these 'other sources' cannot establish the existence of a medically determinable impairment," which requires "evidence from an 'acceptable medical source,'" other sources "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." <u>Id.</u> When considering opinion evidence from other sources, ALJs must use the same factors used to weigh the opinions from acceptable medical sources. <u>Id.</u> at *4-5. SSR 06-03p explains the consideration given to opinions from "other sources." <u>Id.</u>

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

<u>Id.</u> at *6.

### ALJ's Opinion

The ALJ discussed Tammy Canterbury and the treatment team's opinions as follows:

> The claimant's counselor, Tammy Canterbury, APRN, limited the claimant to no high stress situations and stated the claimant has marked limitations in completing a normal

workday, working in proximity to others, and accepting criticism (Ex. 18E, p. 31; 26F). Because Ms. Canterbury is an advanced practice registered nurse, she is not an acceptable medical source, thus, she is not eligible to provide a medical opinion. However, the undersigned has given her statement consideration using the factors in 20 CFR 404.1527(d) and 416.927(d). The undersigned assigns no weight to Ms. Canterbury's statements because they are inconsistent with the claimant's activities of daily living and the clinical signs and findings, including her stable mood and manageable anxiety. Furthermore, her statement regarding high stress situations is vague.

\*\*\*

The claimant's treatment team, let by Gerald Gambrill, M.D., opined that the claimant has marked impairments in concentration and focus and that her ability to remain persistent is greatly impaired. (Ex. 13F). They also questioned her ability to maintain full-time employment. (Ex. 13F). The undersigned assigns some weight [sic] this opinion. However, these opinions are vague and conclusory. Moreover, they are inconsistent with the claimant's stable mood and manageable anxiety.

(Tr. at 18-19).

First, plaintiff claims that the ALJ's opinion with respect to the treatment team is incapable of meaningful review because he gave the opinion some weight but failed to identify what part. The court disagrees. The ALJ set forth the specific opinions of the treatment team immediately prior to stating that he assigned some weight to those opinions. Earlier in the decision, the ALJ identified other opinions offered by the treatment team which he disregarded because they conflicted with the evidence. (Tr. at 16).

Plaintiff further argues that the ALJ's statement that the treatment team's opinions are vague and conclusory is not clear and the case must be remanded in order to determine why the ALJ found the opinions as such, citing Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). In Robinson, the ALJ had stated that a medical

-8-

opinion was "vague and conclusive."  The Tenth Circuit found that language incapable of review because "he did not say [] that Dr. Baca's opinion was not well-supported."  Robinson, 366 F.3d at 1083. The ALJ's decision in this case clarifies his statement by explaining that the treatment team's opinion is inconsistent with the claimant's stable mood and manageable anxiety.  (Tr. at 19).  Therefore, the court is able to review the ALJ's decision and determine if there is sufficient evidence to find that the treatment team's opinion is inconsistent with the evidence.[3]

The ALJ conducted an extensive review of plaintiff's treatment history.  Significantly, plaintiff alleged that her disability began on December 31, 2009.  Plaintiff, however, did not begin mental health treatment for her symptoms until September 2011 after plaintiff suffered a panic attack while shopping.  Plaintiff was prescribed Abilify and Ativan and, by October 2011, plaintiff's mood was stable and she was not suffering symptoms of depression.  In February 2012, plaintiff made a trip to the store alone and she had not suffered a panic attack.  In March 2012, plaintiff's anxiety levels were manageable.  In August 2012, plaintiff reported a very stable mood and went shopping at Wal-Mart.  In September 2012, plaintiff had concentration problems and spent time in bed.  In October 2012, plaintiff stabilized, went out in public more and her anxiety level was low.  In December 2012, plaintiff participated in group therapy

---

[3] The analysis of the evidence is equally applicable to Canterbury's opinions as the opinions are very similar.  See Doc. 11 at 17 (Plaintiff's brief states that her argument does not specifically discuss Canterbury's opinion because the arguments are duplicative of those set forth in her discussion regarding the treatment team opinion).

and discontinued Clonazepam.  Plaintiff's anxiety was manageable and she had a stable mood.

Plaintiff was evaluated by Dr. Mintz who reported that plaintiff exhibited no significant pattern of psychosis, confusion or disorientation.  Plaintiff exhibited a depressed and anxious mood. However, plaintiff was able to identify common historical figures, current and past presidents, perform basic arithmetic, count backward and remember three out of three words after five minutes.  Dr. Mintz opined that plaintiff may be limited to certain work because of her anxiety and mood swings but those limitations do not preclude plaintiff from employment.

In January 2013, plaintiff reported increased hallucinations, aggression and impulsiveness.  At this time, plaintiff was receiving testosterone treatment.  Plaintiff's Abilify was increased and she started taking Cymbalta.  Plaintiff then reported that her hallucinations and violent thoughts abated.  Plaintiff also stated that she was making new friends and exercising.

After a review of the record and the ALJ's decision, the court finds that substantial evidence supports the ALJ's conclusion that the treatment team and Canterbury's opinions are inconsistent with the evidence.  The record demonstrates that plaintiff's symptoms are manageable with medication.  Generally, if an impairment can be reasonably controlled by medication or treatment, it cannot be considered disabling.  Wiley v. Chater, 967 F. Supp. 446, 451 (D. Kan. 1997)(citing Johnson v. Bowen, 864 F.2d 340, 348 (5th Cir. 1988)).

Plaintiff also contends that her low GAF scores are inconsistent with the ALJ's decision.  The problem with this argument is that the

-10-

ALJ was not required to adopt the GAF scores, which are inconsistent with the more specific mental limitations the ALJ found on the basis of Dr. Mintz' opinion.[4]  Dr. Mintz is an "acceptable medical source," who issued a medical opinion.  The GAF scores, which plaintiff cites to, were assessed by a counselor and do not qualify as a medical opinion.[5]   See 20 C.F.R. §§ 404.1513(a), 404.1527(d); id. §§ 416.913(a), 416.927(d).

### Conclusion

The court finds that the ALJ properly evaluated the medical and nonmedical evidence in assessing plaintiff's RFC.  Substantial evidence supports the Commissioner's decision that plaintiff is not disabled.

### B.  Plaintiff's Credibility

Plaintiff argues that the ALJ failed to properly weigh her credibility.  The ALJ discussed plaintiff's credibility as follows:

> The undersigned finds the clinical signs and findings are inconsistent with the claimant's allegations [of hallucinations and aggression] because her symptoms are controlled and stable with regular treatment.
>
> The undersigned also notes other factors decrease the claimant's overall subjective allegations. For example, in November 2011, the claimant [underwent] psychological testing, but the claimant's excessive number of infrequent responses resulted in invalid results.  The claimant's

---

[4] Notably, Dr. Mintz issued plaintiff a GAF score of 57 on the day of his examination.  This score is quite higher than the scores issued by staff at the Elizabeth Layton Center during the same time period.

[5] The Tenth Circuit has repeatedly noted that generalized GAF scores, which do not specify particular work-related limitations, may be helpful in arriving at an RFC but are "not essential to the RFC's accuracy." See, e.g., Butler v. Astrue, 412 Fed. Appx. 144, 147 (10th Cir. 2011); Holcomb v. Astrue, 389 Fed. Appx. 757, 759 (10th Cir. 2010).

responses to the Millon Clinical Multiaxial Inventory-III also indicated a tendency to magnify her illness.

Moreover, the claimant's activities of daily living are inconsistent with her allegations.  The claimant testified that she mows her lawn, walks her dogs, and shops.  The claimant also reports that she cares for several pets, cooks daily, performs personal care independently, performs household chores, such as washing dishes and laundrey, performs household maintenance, drives and manages her finances.  The claimant also reports that she can follow a recipe, and she reported completing her Adult Function Report without assistance.  Finally, the clamant reports that she enjoys watching movies and drawing or painting, and she can use [sic] play video games or use the computer for at least 30 minutes to one hour at a time.

The claimant's allegations are also inconsistent with her work history.  In 2011, the claimant reported having 17 jobs over a period of five years.  The claimant has also held several jobs since the alleged onset date.  For example, the claimant worked at Subway from March 2011 through November 2011, and her supervisor reported she generally did the work without problems.  The claimant also testified she continues to look for work, which the undersigned finds detracts from the claimant's credibility.

(Tr. at 17).

Plaintiff contends that the ALJ's credibility determination was flawed because the evidence did not support his findings.  The ALJ, as the finder of fact, is ideally suited to assess credibility, and the Court will not disturb an ALJ's credibility findings if they are supported by substantial evidence.  Wilson v. Astrue, 602 F.3d 1136, 1144 (10th Cir. 2010).  But credibility findings must be linked to substantial evidence and not just a conclusion dressed as a finding. Id.  Generally, an ALJ's credibility determinations are treated as binding on review, recognizing that symptoms are sometimes exaggerated when applying for government benefits.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990).

First, plaintiff argues that the evidence does not support the

determination that plaintiff's condition had "improved"[6] based on the her GAF scores and the frequency of therapy. (Doc. 11 at 17). The court disagrees. As discussed above, plaintiff's medical records support a finding that plaintiff's symptoms are abated with medication. When plaintiff's symptoms increased, there was a successful attempt to diminish those symptoms with an increase in medication. Therefore, the ALJ's determination that plaintiff's symptoms were not as disabling as plaintiff alleged was supported by the record.

Second, plaintiff contends that the ALJ's determination that plaintiff has exaggerated her symptoms based on the results of the psychological testing was flawed because she was never diagnosed with malingering or symptom magnification. Plaintiff, however, fails to cite any authority for the proposition that plaintiff must be diagnosed as a malingerer for the ALJ to find that she has magnified her symptoms. Dr. Carr administered the tests to plaintiff and noted in his report that plaintiff tended to magnify her illness. Therefore, the ALJ's credibility finding was supported by the evidence.

Third, plaintiff asserts that her work history is not inconsistent with her allegations. Plaintiff argues that her poor job record actually supports her allegation that she cannot maintain employment. The record, however, shows that plaintiff successfully worked for a period of six months at Subway in 2011. Moreover, plaintiff actively sought employment while her application was

---

[6] The ALJ did not find that plaintiff's condition was "improved." He found that her condition was stable and manageable with medication.

pending.  The records show that she was excited about the prospect of gaining employment.  This is inconsistent with plaintiff's allegation that she is too anxious to work.  The record supports the ALJ's credibility determination.

Finally, plaintiff contends that her activities of daily living do not detract from her credibility because these activities are not considered to constitute gainful activity.  Plaintiff, however, fails to identify how the ALJ's determination that her daily activities are inconsistent with her allegations of disability.  Therefore, plaintiff has not identified how the ALJ's decision is not supported by the evidence.

**IV.  Conclusion**

The court finds that the ALJ's decision is supported by substantial evidence.  Thus, the court affirms the Commissioner's decision.


IT IS SO ORDERED.

Dated this   29th   day of June 2015, at Wichita, Kansas.


s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE

-14-